White, J.
All the charges asked, by the defendant, were given to the jury, either unconditionally, or subject to the explanations and qualifications contained in the general charge, except the fourth, which was refused. The charge is set out in full in the bill of exceptions; but, without referring to it in detail, it is sufficient here to state that the qualifications *243 imposed were more favorable to tbe defendant (now plaintiff in error) than a just exposition of the law, in our opinion, as applied to the case, required.
The case is regarded as the representative of a number of others depending between the plaintiff below and other subscribers. It has been thoroughly and ably argued, and, without specially noticing all the various points submitted to our consideration, we will proceed to a determination, at once, of the material questions arising in the case.
I. The terms in which the defendant’s promise to the plaintiff below is expressed, for the payment of the four hundred dollars, the amount of his subscription, indicate an obligation in presentí. The only qualifications are, that the installments and times of performance are to be such as the president and directors, under the charter and by-laws, may prescribe. If the taking effect of the obligation is not immediate, as its terms would imply, but is postponed, and made dependent upon future contingencies, as conditions precedent, such conditions must be found in the terms of the proviso. What, then, is the intention of the parties, as therein expressed, and to be gathered from a fair construction of the language employed ? In answering this question, the situation and relation of the parties to each other, the object sought to be attained, and the subject matter to which the agreement relates, are material, and, in cases like the present, we might say, indispensable aids in guiding us to the correct construction. The plaintiff below was organized for the purpose of constructing a railroad between certain termini, and the places named in the subscription were so situated as that they might, in its location, be made intermediate points. Its means of carrying on the enterprise consisted of subscriptions to its capital stock. The subscribers would be those who favored the enterprise, and for whose benefit it was to be performed. Its capacity to enter upon, and its ability to complete, the work, depended upon its stock-subscriptions. It was,, in a word, to be owned and controlled by the stockholders. If a success, it would be their gain; if a failure, their loss. In con *244 struing the contract in question, it is not to be approached as though the object sought by the parties was the defeat of the enterprise. A strictly literal performance of the terms of the proviso, assuming all therein stipulated to be conditions precedent, would require only the permanent location of the road — not its construction — and the erection of the “ freight house and depot.” But the building of the latter would be useless without the completion of the former; and, if for any cause the road should fail to be made, or the work should be suspended while in course of construction, it would be for the interest of all concerned that no money should have been expended on the buildings. But a literal construction would be unreasonable, and manifestly against the intention. It must be presumed to have been contemplated by the parties that the road and buildings necessary to its operation for business, when completed, would be constructed in the usual way. That the plaintiff undertook to build the freight house and depot is clear. The question is, was the performance of the undertaking a condition precedent, or, was it not rather a stipulation, which the company undertook to perform at the appropriate time ? It may be said that the road was to be completed, as well as the buildings, before the subscription would become binding. But it is not so written. All that is required to be done, in regard to the road, is that it be “ permanently located” so as to make the points named. The “ freight house and depot” only are required to be “built.” There is no more reason for requiring the plaintiff to do more than permanently locate its road, thus adding to the language of the proviso, than there would be to lessen the expressed obligation in regard to the buildings. If the party intended that the building of both should concur before his rights and liability, as a stockholder, should attach, it seems to us he would have applied the same or similar language to both. It would be a greater departure from the letter to add to the sense of the words “ permanently located,” and require the road to be completed, than to give to the depot clause the effect of a stipulation or condition subsequent; which would simply post *245 pone the time of its performance. In the meantime the road would be in process of construction on the line desired by the defendant; and, to the extent of his subscription, like other stockholders, he would contribute to the work, and have the right, in common with them, to exercise a corresponding influence in the affairs of the corporation.
The express stipulation that the amount of the subscription is to be paid at times and in installments, upon the requisitions of the directors, like ordinary stock-subscriptions, favors this construction. The design of such requisitions is to lighten the burden of payment on the subscribers as much as may be found, by the directors, consistent with the due prosecution of the work for which the corporation was formed. If it had been the design of this subscriber, by special terms, to entirely exempt himself from all interest and liability until the work should be completed, and thus make every thing which the company was to perform a condition precedent, it is hardly reasonable to suppose, that, with such a purpose in view, he would have further stipulated for payment by future calls, the making of which necessarily involved the exercise, by the directors, of a discretion dependent upon the necessities and financial condition of the company.
But, looking behind the letter, to the object of this subscription, as disclosed by the situation of the parties, and the nature of the enterprise they must have designed to promote, we find others, and, taken in connection with those already noticed, controlling objections to giving to the clause in question the effect of a condition precedent. The end sought was the completion of the proposed railroad, with the depots and buildings necessary to its operation. The object of the defendant was to secure it, with a freight house and one of its depots, at the point named in his subscription. After the location of the road, which would require comparatively but a small expenditure, the first, and known to all as an indispensable requisite to the successful prosecution of the work, was a sufficient amount of available stock-subscriptions. The capital of the plaintiff consisted of its stock. But it could *246 not employ contractors, purchase materials and rights-of-way — in short, build a railroad — upon the credit of its untaken stock. What its situation required was, not subscribers who would agree to take stock when the road should be finished, but present subscriptions, which alone would furnish the means and credit that would enable it to construct its road. At the time this subscription was made the road had not been located. It is to be presumed, from the form of the subscription, that there was another and probably a competing route upon which the road might be located, and that the amount of assistance offered to the company, in the way of stock-subscriptions, by the friends of the respective localities, would and were designed to have, a material influence in the final selection of the route. Did the defendant below and Ms co-subscribers, in making their subscriptions, design, thereby, to give assurance to the company, in case the road should be located according to the condition of their subscriptions, not that they would render any present assistance toward the construction of the road, but simply that, when it should be completed, they would take the amount of their -respective subscriptions in stock ? Is it reasonable to suppose, that the company, under the circumstances, in accepting the subscription, so understood it? It seems to us the answer to both questions must be in the negative. It is a principle of construction, that when the terms of an undertaking admit of more senses than one, the promise should be performed in that sense in which the promisor apprehended, at the time the promisee received it, it was in fact so understood and accepted. 2 Kent’s Comm. * p. 557. And it would be manifestly against reason to adopt a construction that would tend to defeat rather than promote the object of the parties.
We are of opinion, therefore, that when the railroad company accepted the subscription, and permanently located its road in accordance with its terms, it took immediate and full effect as a stock-subscription; and, that the provision in relation to building the freight house and depot, remained as an executory contract to be performed by the company.
*247 This is the construction which both parties, by their subsequent conduct, adopted — the plaintiff in error, no less than the company. He paid $260 of assessments upon his subscription, and made the note in suit for the balance. In the proxy which he gave he describes himself as a stockholder, and authorizes Gardner to vote for him at the annual election held by the company the February next preceding the date of the note. It would seem also that he attended a meeting of those interested in the road near Chagrin Falls and voted in favor of prosecuting the work. All this shows, unequivocally, that he regarded himself both as having acquired the rights and incurred the liability of a stockholder.
But it is claimed that the company was not authorized to receive conditional subscriptions, or to bind itself to the performance of conditions as a consideration for their payment.
The conditions referred to may be either precedent, or subsequent. Of the former class we see no objection to the subscriber inserting such as he may choose. Until they are performed the relation of the subscriber to the company as a stockholder does not arise. But, after that relation is established, whether the non-performance of a condition subsequent would work its dissolution is a different question. It may be that all such conditions as these last named, should be viewed, as between- the corporation and the subscriber, in the light of stipulations merely, and that, in case of their non-performance, he should be left for redress to the ordinary remedies for breaches of com tracts.
The provision in question, as we have already stated, is to be regarded as a stipulation on the part of the company, which, in accepting the subscription in the terms proposed, it undertook to perform. The defendant’s right to require its performance, though arising out of the same contract as the-stock for which he subscribed, does not attach to him as a stockholder, but as a contractor. And whatever might be the rights of the defendant with regard to this stipulation in a controversy with creditors, or other stockholders, yet as between the parties, we are of opinion that it constitutes a *248 valid executory agreement. (H. & N. R. R. Co. v. Leavitt, 16 Ben-Monroe, 358, 364; McMillen v. M. & L. R. R. Co., 15 Id. 218, 235; Chapman & Harkness v. M. R. & L. E. R. R. Co., 6 Ohio St. Rep. 221.)
II. The first and sixth requests were given without qualification. The second was as follows:
“ That the note and receipt taken together, if the jury shall find that they were executed at the same time, and as parts of the same transaction, show prima facie, that the note was given as collateral to the assessments named in the receipt, and if the assessments were illegally made, and could not be enforced, the note itself is without consideration, and can not be enforced.”
This might well have been wholly refused. It involves two deductions of law. First, that the effect, prima facie, of the giving of the note and receipt, Avas that they were collateral to the assessments; and, secondly, that the note would be without consideration if the assessments were illegal. The illegality meant, as shown by the third request, was that they Avere made before the supposed conditions of the subscription had been performed. The assessments, of themselves, would be of no validity. They were nothing more than the mode, prescribed by the directors, in which the subscriber was to pay his subscription. If he was not liable upon that, the assessments could not make him so. The statement, therefore, that the note was collateral to. the assessments was the same, in effect, as claiming it to be collateral to the subscription. Assuming that the subscription contained all the conditions, claimed by the defendant below, they would be conditions, either for the benefit of both parties, and Avhich each would have the right to insist should be performed before the subscription should become absolute, or, which Avould probably be the case here, for the sole benefit of the defendant. If of the latter kind, he could waive them, and, at his own option, make his subscription absolute; if of the former, the consent of both would effect the same result. In this case, upon either view, the waiver is complete, and the defendant placed, by the *249 execution of the note and the receipt, upon the footing of other unconditional subscribers. The company, prima facie, would be entitled to the money when the note became due, and, on payment, the defendant would have a right to the stock. This would have been the effect of the note and receipt,' in the absence of any other ’evidence of subscription. Shoemaker v. Goshen Township, 14 Ohio St. Rep. 571.
III. Another objection to the validity of the subscription is thus stated by counsel, in their argument:
“It was such a subscription as the company had no authority to receive. The powers of the company were special, and the form of stock-subscriptions which it was authorized to accept, was prescribed by statute. An installment of five dollars on each share of stock, was required to be made payable at the time of making the subscription, and the residue, in such installments, and at such times and places, and to such . persons as might be required by the directors of the company. S. & C. Stat. vol. 1, 216, sec. 6.
“ The act is general, is applicable to all railroad companies organized since its passage, and the section referred to is not discretionary, but imposes, and was designed to impose, a limitation upon the powers of the company.”'
The section referred to is designed to fix the time of payment of the first installment, and to provide the mode for determining the time at which the residue should become payable. It does not prescribe the form in which subscriptions are required to be made; nor, does the want of a stipulation for the payment of five dollars on each share of stock invalidate the subscription.
TV. The seventh request asked to be given in charge was as follows:
“ That in order to entitle the company to effect such organization, one tenth part of the stock must have been absolutely subscribed, and upon a meeting of such stockholders, called by the persons named in the certificate of organization, or any three of them, for the election of directors.”
The jury had already been instructed as to the amount of *250 stock necessary to enable the stockholders to elect directors, in the sixth charge asked, which, as already stated, was given without qualification. The point here sought to be raised was, that the first election of directors, after the requisite amount of stock had been subscribed, must have been at a meeting of the stockholders called by the persons named in the certificate.
The statute provides, that as soon as ten per centum on the capital stock shall be subscribed, the persons named in the certificate of incorporation, or any three of them, may give notice for the stockholders to meet for the purpose of choosing directors. But we do not think it indispensable to an-election, that the notice for it should be given by the persons named. Suppose they should all die before the time arrived for giving the notice, or, any of the many other contingencies should occur which would prevent their action, could no.t an election be had? If the necessary amount of stock has been obtained, and at a meeting of the stockholders for the purpose, they elect'directors, the validity of their acts can not be questioned collaterally, on account of the irregularity in their election. The statute in regard to the notice is directory.
Y. The refusal of the court to give, in charge to the jury, the fourth request, could not have prejudiced the defendant, under the construction we have given to the subscription.
It may be remarked, however, that so far as the evidence may have been deemed inadmissible on the ground of not conforming to the allegations in the pleadings, the objection should have been made when the evidence was offered, or at least, before the close of the testimony, so that, the objection might have been obviated by amendment, if remediable in that way. See Hoffman v. Gordon & Bro., decided at the present term.* But in this case, the defendant has set up as his second defense, in general terms, that the note was wholly without' consideration and void. This the plaintiff might have required to be made more definite, by a statement of the facts *251 upon which the defense was based; but he waived this right and joined issue. Under the broad issue thus chosen by the parties, any evidence would have been admissible, which tended to impeach or sustain the consideration of the note; and, it would have been clearly erroneous for the court to have required the jury to disregard all the evidence tending to prove a waiver by the defendant of the supposed conditions contained in the subscription.
The judgment of the common pleas will, therefore, be affirmed.
Brinkerhoee, O.J., and Scott, and Welch, JJ., concurred.

 Ante p. 211.